Ellen M. Boyle, Esq. - NJ ID No. 043211987
Kirmser, Lamastra, Cunningham & Skinner
202A Hall's Mill Road
P O Box 1675
Whitehouse Station, New Jersey 08889-1675
(908) 572-3600
Attorneys for Defendant Medical Diagnostic
Laboratories, LLC; Genesis Biotechnology
Group; Galaxy 2439 Enterprises, LLCC;
Stephanie Berry; and Michelle Guenther

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| VON GORDON<br><br>    Plaintiff,<br><br>v.<br><br>GENESIS BIOTECHNOLOGY GROUP, MEDICAL DIAGNOSTIC LABORATORIES, LLC, GALAXY 2439 ENTERPRISES, LLC, STEPHANIE BERRY, Individually, MICHELLE GUENTHER, Individually, and JOHN DOES 1-5 AND 6-10<br><br>    Defendant | CIVIL ACTION NO. 1:21-cv-12733-RBK-KMW<br><br>**JOINT DISCOVERY PLAN** |

1.      Set forth the name of each attorney appearing, the firm name, address and telephone number and facsimile number of each, designating the party represented.

        (a)        **Toni L. Telles, Esq.**
                    **Law Offices of Eric A. Shore**
                    **4 Echelon Plaza, 8th Floor**
                    **201 Laurel Road**
                    **Voorhees, NJ 08043**
                    **Tel:  (856) 761-3735**
                    **Fax:  (856) 433-6230**
                    **ToniT@Ericshore.com**
                    **Attorneys for  Plaintiff Von Gordon**

(b)      **Ellen M. Boyle**
**Kirmser, Lamastra, Cunningham & Skinner**
**202A Hall's Mill Road**
**P O Box 1675**
**Whitehouse Station, New Jersey 08889-1675**
**Tel: (908) 572-3162**
**Fax: (908) 572-4045**
**ellen.boyle@kirmserlaw.com**
**Attorneys for Defendants Medical Diagnostic Laboratories, LLC; Genesis Biotechnology Group; Galaxy 2439 Enterprises, LLCC; Stephanie Berry; and Michelle Guenther**

2. Set forth a brief description of the case, including the causes of action and defenses asserted.

**Plaintiff alleges the following: Plaintiff, Ms. Gordon, is African American and began working for Defendants on or about November 1, 2019, as a Human Resources Representative. Prior to joining Defendants, she had over fifteen (15) years of experience in Human Resources and had earned a Master's Degree in Communications and a Bachelor's Degree in Business Management. Ms. Gordon was initially reporting to Defendants' Assistant Human Resources Manager, Michelle Guenther, who is Caucasian. Ms. Gordon's performance was initially recognized by Defendants' management as favorable, despite the fact that she was provided little to no training in Defendants' processes. Notwithstanding same, she began to notice that she, and other African American employees, were not treated in the same way as the Caucasian employees.**

**On or about January 6, 2020, Assistant HR Manager Michelle Guenther made discriminatory remarks about race and age regarding Ms. Gordon and another African American employee over the age of 40, Genevieve Truehart. Ms. Guenther made the discriminatory remarks to her subordinate, Sonia Gaur, who confided in another employee that Ms. Guenther had made the comments. This employee reported the discriminatory comments to the HR department while Ms. Gordon was present. Ms. Gordon, who is a trained HR professional, knew that Ms. Guenther's comments violated the law and she reported the incident to the co-managers of the HR Department, Brianna Reed, Caucasian and Diana Bonfonti, Caucasian. Ms. Reed and Ms. Bonfonti reported the comments to HR Director Stephanie Berry, Caucasian, who was required to investigate the report of discrimination.**

**Instead of investigating the discriminatory comments by Ms. Guenter, Ms. Berry suppressed the incident and advised Ms. Guenther that Ms. Gordon had reported the incident. Ms. Berry than proceeded to question Ms. Guenter's subordinate, Ms. Gaur directly, and, notably, in the presence of her supervisor, Ms. Guenther. In response to Ms. Gordon's complaint of discrimination, Ms. Berry met with Ms. Gordon, Ms.**

Guenther and Ms. Gaur, and told Ms. Gordon that she had essentially been wrong, and stated, "Von, I wanted to bring you in to talk about a situation that was reported to me incorrectly."

Following her reporting of the racial and age-based discriminatory comment, Ms. Gordon found herself retaliated against for making the report. For example, following the report, Ms. Guenther made unprofessional, inappropriate, and false statements about Ms. Gordon in front of her coworkers, aimed at undermining, discrediting and humiliating her. Ms. Gordon asked Ms. Guenther to stop making the harassing and discriminatory statements, but she persisted in retaliating against Ms. Gordon.

On February 6, 2020, Ms. Gordon met with Ms. Berry to discuss the harassment and discrimination she was experiencing from Ms. Guenther. Although Ms. Berry promised to set up a meeting between Ms. Gordon and Ms. Guenther, Ms. Berry never scheduled the promised meeting. On February 10, 2020, Ms. Reed and Ms. Bonfonti met with Plaintiff and threatened her with a 90-day Performance Improvement Plan regarding alleged mistakes made in the course of her duties.

Prior to February 10, 2020, Ms. Gordon had been told that she was doing an "amazing job" and she had a "bright future with the company." After the February 10, 2020 meeting with Ms. Reed and Ms. Bonfonti, Ms. Gordon experienced additional racist and disparate treatment. For example, she was denied a request to take a Society for Human Resources Management ("SHRM") course, while three Caucasian colleagues' requests to take the course were approved. As well, although the Caucasian HR representatives received new business cards, Plaintiff did not.

In correspondence dated February 24, 2020, Ms. Gordon shared her complaints of harassment and retaliation with CEO Eli Mordechai and Chief Legal Officer Susan Kase. She complained about the hostile work environment created and ongoing retaliation, by emails to Ms. Kase dated March 5, 13, and 18, 2020. On or about March 19, 2020, Ms. Gordon was called into a meeting with Ms. Berry and HR manager Alyssa Westfall, during which she was reprimanded for her complaints of racism, harassment and retaliation.

On or about April 22, 2020, several positive COVID tests were reported in Defendant's Galaxy building, resulting in 12 employees being sent home to quarantine with pay. Because Ms. Gordon routinely visited the Galaxy building during the course of her duties, she requested a COVID test and paid leave while she quarantined for two weeks. Ms. Berry and Ms. Westfall contradicted earlier statements and denied that there were any positive tests in Galaxy building, and told Ms. Gordon that she can take an unpaid leave of absence, but "we are not paying and we are not offering a COVID test to you." Ms. Gordon objected to this further retaliation and disparate treatment. On or about April 27, 2020, Ms. Gordon was approved for a 30 day leave of absence, without pay. By email dated April 29, 2020, while she was out on approved leave, Ms. Gordon received an email from Ms. Westfall

**terminating her employment "because of difficult economic times due to the Coronavirus and with no hope for recovery any time soon."**

**However, on or about May 1, 2020, Plaintiff found a posting by Defendant for Plaintiff's position from which she was terminated. Ms. Gordon believes she was replaced by younger, a non-African American person.**

**Defendants assert that any complaints that Plaintiff made regarding disparate treatment were fully investigated and were found to be unfounded. Plaintiff simply disagreed with guidance and criticism provided by supervisors. In addition, the same people who Plaintiff is claiming discriminated against her based on her race and her age are the employees who hired her a few months before. Much of Genesis' business involves laboratory services for woman's health testing. When the COVID pandemic hit in mid-March 2020, many of the medical offices offering women's health services shut down. Nearly half of the work force was furloughed due to the COVID slow down. The Company also laid off employees in human resources including Plaintiff. On April 28, 2020, Plaintiff's employment was terminated due to the slow down.**

3. Have settlement discussions taken place?  **Yes ___   No x**
   (a) What was Plaintiff's last demand?
       (1) Monetary demand: $_____
       (2) Non-monetary demand: _____
   (b) What was Defendants' last offer?
       (1) Monetary offer: $ _____
       (2) Non-monetary offer: _____

4. The Parties [have x   have not ____] met, pursuant to Fed. R. Civ. P. 26(f):

5. The Parties [have ____   have not x] exchanged the information required by Fed. R. Civ. P. 26(a)(1). If not, state the reason therefor.

6. Explain any problems in connection with completing the disclosures required by Fed R. Civ. P. 26(a)(1).

7. The parties [have ____   have not x] conducted discovery other than the above disclosures. If so, describe.

8. Proposed joint discovery plan:

   (a) Discovery is needed on the following subjects:

       Liability and Damages

4

    (b)    Discovery [should _____ should not x] be conducted in phases or be limited to particular issues.  Explain.

    (c)    Proposed schedule:
(1) Fed. R. Civ. P. 26 Disclosures, to be served by **September 15, 2021**
(2) E-Discovery conference, pursuant to L. Civ. R. 26.1(d): **October 1, 2021**
(3) Service of initial written discovery demands by **September 15, 2021**.  Responses shall be served by **October 15, 2021.**
(4) Maximum of **10 fact** depositions to be taken by each party.  Fact depositions are to be completed by **February 1, 2022.**
(5) Motions to amend or to add parties to be filed by **March 1, 2022**.
(6) Factual discovery to be completed by **March 1, 2022**.
(7) Plaintiff's expert report due on **March 30, 2022.**
(8) Defendant's expert report due on **April 30, 2022].**
(9) Expert depositions to be completed by **May 30, 2022**.
(10) Dispositive motions to be served within **45 days** of completion of expert discovery.

    (d)    Set forth any special discovery mechanism or procedure requested.

    (e)    A pretrial conference may take place on

    (f)    Trial date: _____ (\_\_\_\_\_ Jury Trial   _____ Non-Jury Trial).

9. Do you anticipate any special discovery needs (i.e., videotape/telephone depositions, problems with out-of-state witnesses or documents, etc)?

Yes \_\_    No x

If yes, please explain.

**The parties plan to do so by September 15, 2021.**

10. Do you anticipate any issues about disclosure or discovery of electronically stored information, including the form or forms in which it should be produced?

Yes \_\_    No x

If so, how will electronic discovery or data be disclosed or produced?

Describe any agreements reached by the parties regarding same, including costs of discovery, production, related software, licensing agreements, etc.

5

11. Do you anticipate any discovery problem(s) not listed above?

Yes ___    No x

12. State whether this case is appropriate for voluntary arbitration (pursuant to Local Civil Rule 201.1 or otherwise) or mediation (pursuant to Local Civil Rule 301.1 or otherwise).

If not, explain why and state whether any such procedure may be appropriate at a later time (i.e., after exchange of pretrial disclosures, after completion of depositions, after disposition or dispositive motions, etc.).

**Plaintiff's claimed damages exceed $150,000 and, therefore, this matter is not appropriate for mandatory arbitration, pursuant to Local Civil R. 201.1. After depositions are completed, the Parties will be better able to advise the Court as to whether mediation might be fruitful.**

13. Is this case appropriate for bifurcation?

Yes ___    No x

14. An interim status/settlement conference (with clients in attendance) should be held in

**Status Conference:**
**Settlement Conference:**

15. We [do ___ do not x] consent to the trial being conducted by a Magistrate Judge.

16. Identify any other issues to address at the Rule 16 Scheduling Conference.


*/s/ Toni L. Telles, Esq.*

_____

Toni L. Telles, Esq.
Attorneys for Plaintiff Von Gordon


*/s/ Ellen M. Boyle, Esq.*

_____

Ellen M. Boyle, Esq.
Attorneys for Defendants Medical Diagnostic Laboratories, LLC; Genesis Biotechnology Group; Galaxy 2439 Enterprises, LLCC; Stephanie Berry; and Michelle Guenther